**FILED IN OPEN COURT**

7-30-2015

CLERK. U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:15-cr-42-J-32JBT

DEVIN LEE SMITH

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, Devin Lee Smith, and the attorney for the defendant, Maurice C. Grant, II, mutually agree as follows:

### A.    Particularized Terms

#### 1.    Count Pleading To

The defendant shall enter a plea of guilty to Count Three of the Indictment.  Count Three charges the defendant with Transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).

#### 2.    Minimum and Maximum Penalties

Count Three is punishable by a mandatory minimum term of imprisonment of 10 years up to life, a fine of up to $250,000, a term of supervised release of at least five years, and a special assessment of $100.  A violation of the terms and conditions of supervised release carries a maximum sentence of

Defendant's Initials _DS_                              AF Approval

not more than five years imprisonment as well as the possibility of an additional term of supervised release.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count Three are:

First:       The defendant knowingly transported A.G. in interstate
              commerce;

Second:   At the time of the transportation, A.G. was less than 18 years
              old; and

Third:      At the time of the transportation, the defendant intended that
              A.G. would engage in prostitution or other unlawful sexual
              activity.

4. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One , Two and Four, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant

Defendant's Initials _DS_                2

with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.   Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to "a juvenile whose initials are A.G."

7.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of

responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the

Defendant's Initials  _DS_                         4

Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

      9.    <u>Use of Information - Section 1B1.8</u>

      Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

      10.    <u>Cooperation - Responsibilities of Parties</u>

      a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

Defendant's Initials ⁀DS⁀           5

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in

open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11.   <u>Sex Offender Registration and Notification</u>

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school.  Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

12.   <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 2428, whether in the possession or control of the United States, the defendant or defendant's nominees.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also hereby agrees to waive all constitutional, statutory and

Defendant's Initials _DS_                    8

procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly after accepting this Plea Agreement, the Court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such

Defendant's Initials _DS_                    9

assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute

assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

## B.   **Standard Terms and Conditions**

### 1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for

Defendant's Initials _DS_                    11

collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to,

garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in

order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a

special assessment pursuant to 18 U.S.C. § 3013. The special assessment is

due on the date of sentencing. The defendant understands that this agreement

imposes no limitation as to fine.

### 2. Supervised Release

The defendant understands that the offense(s) to which the

defendant is pleading provide(s) for imposition of a term of supervised release

upon release from imprisonment, and that, if the defendant should violate the

conditions of release, the defendant would be subject to a further term of

imprisonment.

### 3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon

conviction, a defendant who is not a United States citizen may be removed from

the United States, denied citizenship, and denied admission to the United States

in the future.

### 4. Sentencing Information

The United States reserves its right and obligation to report to the

Court and the United States Probation Office all information concerning the

background, character, and conduct of the defendant, to provide relevant factual

Defendant's Initials _DS_

information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

      5.    <u>Financial Disclosures</u>

      Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records

Defendant's Initials _D S_           13

and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not

such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if

defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this _____ day of _____, 2015.

A. LEE BENTLEY, III
United States Attorney

_____
DEVIN LEE SMITH                              MAC D. HEAVENER, III
Defendant                                    Assistant United States Attorney

_____
MAURICE C. GRANT, II                         JULIE HACKENBERRY
Attorney for Defendant                       Assistant United States Attorney
                                             Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:15-cr-42-J-32JBT

DEVIN LEE SMITH

<u>PERSONALIZATION OF ELEMENTS</u>

1.      On or about December 4, 2014, through on or about March 10, 2015, at

Jacksonville, in the Middle District of Florida, Georgia, and elsewhere, did you

knowingly transport A.G. in interstate commerce, that is, from the state of

Georgia to Jacksonville, in Middle District of Florida?

2.      Do you admit that at the time of the transportation, A.G. was less than 18

years old?

3.      At the time of the transportation, did you intend that A.G. would engage in

prostitution or other unlawful sexual activity?

Defendant's Initials _DS_                          19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO. 3:15-cr-42-J-32JBT

DEVIN LEE SMITH


FACTUAL BASIS


The victim of the offense alleged in Count Three was a 17-year old female at the time of the offense.  The victim stands less than five feet tall, and her appearance, speech, and mannerisms are consistent with her age.  The defendant, Devin Lee Smith ("Smith"), was either 26 or 27 years old at the time of the offense alleged in Count Three.

Section 794.05, Florida Statutes, establishes a second degree felony, punishable by up to 15 years in prison, for any person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age.

Between December 4, 2014, and March 10, 2015, Smith transported A.G. on multiple occasions from South Georgia to hotels located near the Jacksonville International Airport in Duval County, Florida.  The purpose of the trips was for A.G. to engage in acts of prostitution.  During the trips, A.G. would also engage in sexual intercourse with Smith.

The investigation began when the National Center for Missing and Exploited Children ("NCMEC") received a "Cybertipline" complaint from

Defendant's Initials _DS_                    20

Backpage.com.[1]  The report from Backpage.com noted that someone contacted Backpage.com about an advertisement featuring a photograph of A.G. and complained, "This is my niece [A.G.] she is only 16 years old! I will have you turned in.  She is a minor! Her mother and I are trying to get her home!  She is on pills and other drugs.  She is a run away.  Please help us get her home and get her off this site."  The tip included a copy of the ad, which featured photographs that depict the victim, A.G.  The ad made reference to the victim being a "Georgia Peach," contained pricing for various time intervals, and instructed customers to text the victim at (901) 457-0536.

As a result of this tip, JSO Detectives R. Trew and M. Davis began monitoring the Jacksonville Backpage postings under the "escort" category for similar ads by the victim.  They observed ads with the same female's photographs on March 4, 2015, and March 5, 2015, but the ads were now using the phone number (912) 276-1532.  The detectives subsequently identified the young woman depicted in these ads to be A.G.  A DAVID print-out confirmed that A.G. was currently 17 years old.

On March 10, 2015, Detective Trew located a Backpage ad depicting A.G. and began a text conversation with her at 8:30 a.m.  A.G. was using the number (912) 276-1532.  In text messages, the victim asked Detective Trew if he worked for law enforcement and asked for his age and sex.  After answering these

---

[1] Backpage.com is a company that engages in significant interstate commerce.  The company operates an internet advertising site that is well known for prostitution ads.  The company maintains its corporate offices in Dallas, Texas, and all ads placed on its site are transmitted to, and stored on, computer servers located in Arizona.

questions, the victim directed Detective Trew to the Travelodge Inn and Suites[2] at 1153 Airport Road in Jacksonville.  Once Detective Trew arrived at the hotel, he texted the victim and advised that he was there.  At this point, the victim texted Detective Trew and told him that she was in the back of the hotel in room number 343.

Detective Trew then proceeded to the back of the hotel.  When he got there, he observed Smith exiting room 343 in a bright orange, hoodie sweatshirt. Detective Trew parked and went to room 343 where the victim invited him into the room.  After he entered, the victim asked Detective Trew what he wanted to do, and he said that he wanted sex.  The victim replied that it would be $90.  At this point, both the victim and Smith were detained.

While at the hotel, Detectives Trew and Davis advised Smith of his Miranda warnings.  Smith stated that he had been the victim's boyfriend for about five months and that the victim told him to leave the room because a customer was coming to see her.  Smith admitted knowing that the victim made money through acts of prostitution, and he knew she was 17.

The detectives also interviewed the victim at the hotel. She said that she and Smith had been dating about six months.  She said that they both arrived at the Travelodge hotel on March 8, 2015, traveling from Smith's mother's house in Waynesville, Georgia.  She stated that she had been with one other customer

---

[2] The Travel Lodge Inn and Suites is part of the Travellodge hotel franchise brand.  The hotel operates a reservation line and is headquartered in Parsippany, N.J.  It is also part of the Wyndham Hotels brand.  The particular hotel is nearby the Jacksonville International Airport and routinely houses interstate travelers.

prior to Detective Trew on this trip, an unknown truck driver who paid her $800 for prostitution. She also advised that Smith had no means of support apart from her payments received from acts of prostitution.

The victim and Smith were then transported to the JSO Integrity office. While there, the victim relayed that Smith had driven her from Georgia to Jacksonville once or twice a week for the past five months so that she could post ads for her to engage in prostitution. He would drive her car each time, until she was in a wreck on February 26, 2015. She advised that Smith would come with her to Florida for protection, and they would share the money she made from prostitution. The victim relayed that Smith did not make her work, but she knew when they needed money, and whatever money they had was from prostitution. The victim advised that she was addicted to Roxies. The victim also advised that, in addition to Jacksonville, she had posted ads in St. Marys and Brunswick in Georgia. The victim again affirmed that Smith had never been employed while she had known him. Following her interview, the victim was delivered to the Florida Department of Children and Family Services in accordance with the Florida Safe Harbor Law.

Smith was interviewed at JSO Integrity as well, and this interview was video and audio-recorded. During his interview, Smith confirmed that his phone was (912) 276-1532, but called the phone "our" phone that was in his name. He stated that he was last employed about a year ago. He said he had known A.G. about five to six months, but they began dating several months ago. He

Defendant's Initials _DS_          23

indicated that he met the victim here in Jacksonville through friends. He stated that this was his second or third trip to Jacksonville. He admitted that he knew she had engaged in prostitution before, but claimed that he had no idea that something was going to happen that morning. He advised that the hotel room was in the name of David Blitch, but that was only because Baker County Sheriff's Office deputies had kept Smith's ID during a previous encounter. Later, Smith said that he had been down here two times for the victim to prostitute. He advised Detective Trew that he had never posted the victim in ads and had never seen her ads. During the interview, Smith wanted to clarify that he in no way was the victim's pimp.

Following the interview, Detectives Trew and Davis placed state of Florida human trafficking charges on Smith. When searching Smith's person incident to arrest, the detectives obtained a prepaid credit card on his person in the name of Jessica Sapp, with an account number that ended in 4533. Also, while the detectives were waiting at the back door of the Duval County Jail, Smith began crying and stated, "We did this shit to support a drug habit. We're both addicted to Roxies."

At the time of the hotel operation, Detectives Trew and Davis also obtained the Travelodge business records for the occupancy of room 343 on March 10. That record showed that the customer was David Blitch. The arrival date was March 8, 2015, and cash was paid for the room on March 8 and March 9 in the amount of $51.38 each night.

Backpage.com produced records in response to a federal grand jury subpoena that requested ads related to the victim from December 1, 2014, to March 10, 2015. Among other things, the ads produced revealed the following:

- 52 ads depict the victim, and these ads span from December 4, 2014, up to March 9, 2015. Most of these ads contain some reference to the victim being a "Georgia peach." Many of the ads also contain some type of disclaimer indicating that prostitution was not being advertised. Most of the ads were placed under the Jacksonville escorts category on Backpage.

- Backpage produced several ads from December that depict another female that was later identified as Jessica Sapp, the same name that was on the prepaid credit card recovered from Smith's possession.

- Four separate ads were placed on the dates December 4, December 5, and December 15, 2014, with administrative data captured by Backpage.com indicating the customer name as "Devin Smith, 2001 Atlanta Avenue, Brunswick, GA." In most of the subsequent ads, Smith or the victim used an email address with no customer identification.[3]

---

[3] Backpage.com captures an email address, but customers can also insert a customer profile to include a name and address. Often, Backpage users furnish no information or use a false name.

Defendant's Initials _DS_        25

- One ad that ran on December 4 and December 5 features photos of both the victim and Jessica Sapp and advertises a "2-girl" special.

- Nine ads that ran in Jacksonville on January 14, January 15, January 18, January 20, January 26, and January 29 include a phrase that states, "In St. Marys but will come to you."

- Ads purchased on December 11, 2014, February 11, February 14, March 2, March 3, March 5, March 6, and March 7, 2015 were purchased with the prepaid credit card located on Smith's person during the search incident to his arrest.

- Four ads placed between December 23, 2014, to December 26, 2014, were placed in the Brunswick, Georgia escort category instead of the Jacksonville, Florida escort category.

- 29 of the ads provide Smith's telephone number, (912) 276-1532, as the number to contact for dates.

On February 2, 2015, at 2:45 a.m., Sgt. Bishara and Deputy J. Combs of the Baker County Sheriff's Office had responded to an altercation taking place in a parking lot in Baker County.  Both A.G. and Smith were present. When the deputies interviewed Smith about the altercation allegations, he identified A.G. as his girlfriend and told the officers he had gotten mad at A.G. because they were running low on fuel, A.G. was not watching the GPS, and they were off-course for going back to Brunswick.  When obtaining Smith's information, he listed his

address as 2001 Atlanta Avenue, Brunswick, GA (the same address listed in the Backpage ads).

   During a subsequent interview with the victim, in addition to disclosing that she was engaging in commercial sex acts, A.G. indicated that she and Smith would also engage in sexual activity with each other when they would travel from Georgia to Florida.